MILLS v. DRIVER.

Opinion delivered June 18, 1904.

MARRIED WOMAN—REFORMATION OF DEED.—A deed of a married woman conveying land held by her as her separate property under Const. 1874, art. 9, § 7, may be reformed as if she were a *feme sole.*

Appeal from Mississippi Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Lee Mills and Cleveland Meadows, by his next friend, as heirs, and W. F. Meadows, as husband of Canada F. Meadows, deceased, brought suit in 1901 against J. D. Driver, Abner Driver, trustee of J. D. Driver, John B. Driver and W. L. Seegars. The court sustained a demurrer to the complaint, and plaintiffs appealed. Affirmed.

The complaint alleged that on January 31, 1888, plaintiff W. F. Meadows and wife, Canada F. Meadows, for the purpose of securing the payment of $500 which W. F. Meadows owed defendant J. D. Driver, executed to Abner Driver, as trustee, a mortgage on the south half of the east half of the east half of the northeast quarter, section 34, township 11 north, range 10 east, and on any interest owned by them in the north half of the east half of the northeast quarter of section 34, township 13 north, range 10 east. That Canada F. Meadows owned the south half of the east half of the northeast quarter, section 34, township 13 north, range 10 east. That Canada F. Meadows died intestate, and defendants J. D. Driver and Abner Driver on October 18, 1889, brought suit against plaintiffs to reform said deed of trust, alleging a mistake in the description. That on December 7, 1889, a decree was rendered reforming the trust deed so as to make it convey the south half of the east half of the northeast quarter, section 34, township 13 north, range 10 east. That subsequently on February 21, 1891, the mortgage was foreclosed by the trustee, and the land was sold to defendant John B. Driver. That on October 27, 1896, the latter sold said land to his co-defendant, W. L. Seegars. Plaintiffs asked that the pretended decree of reformation, the deed from Abner Driver to John B. Driver, and that from the latter to defendant Seegars, be cancelled and annulled, and that an accounting of rents be had.

*J. T. Coston,* for appellant.

Courts of chancery are not in the habit of reforming the deeds of married women. 39 Ark. 124; 53 Ark. 53; 60 Ark. 307. Many of the disabilities arising from the marital relation

still exist. 64 Ark. 385, 118. A mistake to be relieved against must be mutual. Bisp. Pr. Equity, 246, 247, 523; 20 Wall. 491. Against mistakes due to negligent conduct the court will not relieve. 90 Fed. 453; 25 N. J. Eq. 48; 26 N. J. Eq. 435. Mistakes must be mutual, and shown beyond a reasonable doubt. 77 S. W. 52; 30 Fed. 862; 50 S. W. 62. A court of equity will protect a minor against the negligence of his *guardian ad litem*. 158 U. S. 138; 70 Ark. 417.

*G. W. Thomason, Driver & Harrison, S. S. Semmes,* for appellees.

The conveyance was subject to reformation, and the mistake subject to correction. Sand. & H. Dig., § 4942; 48 Ark. 498; 60 Ark. 306; 61 Ark. 123.

BATTLE, J. The only question necessary to decide in this case is, can a court of equity reform a deed of a married woman to her own lands, which was executed in the year 1888, so as to correct a description of the land conveyed?

The power of courts of equity to correct material mistakes in deeds by reforming them so as to carry out the intention of the parties is beyond question.

In *Holland* v. *Moon,* 39 Ark. 124, it was held that a court of equity could not reform a deed of a married woman executed in 1860; and in *Bowden* v. *Bland,* 53 Ark. 53, it was held that it could not reform a deed made by her in 1852. At the time these two deeds were executed a married woman could not convey land, except by deed executed by herself and husband and acknowledged and certified in the manner prescribed by the statutes.

In *Knowles* v. *McCamly,* 10 Paige, Ch. 345, it is said: "But as the mother of the infant defendant did not execute and acknowledge these contracts in the manner prescribed by the 10th section of the chapter of the revised statutes relative to the proof and recording of conveyances of real estate, so as to make them binding upon her, as executory contracts for the sale of her interest in the premises, under the 39th section of that chapter (1 R. S. 758, 762), there can be no decree for a conveyance against the infant defendant as her heir at law. To authorize

a decree against a *feme covert,* or her heirs, for the specific performance of a contract to convey her lands, she must not only have signed the contract with her husband, but have also acknowledged it before the proper officer, upon a private examination apart from her husband. It is true a court of chancery sometimes enforces a charge created by a *feme covert* upon her separate estate in the hands of her trustee. But it is upon the principle of the court that, as to such separate estate, she is to be considered and treated as a *feme sole,* and the charge upon the estate is in the nature of an appointment of her equitable interest in the trust estate. * * * But where the legal estate is in the wife, except in the case of a nonresident of the state, her deed or contract, conveying or agreeing to convey such estate, if not acknowledged according to the statute, is a mere nullity, in equity as well as at law. And where she joins her husband in a contract to convey such estate, if she does not acknowledge the contract in the manner specified in the statute in relation to conveyances by married women, it must be considered, in this court as well as in courts of law, the agreement of the husband only.

In *Shroyer* v. *Nickell,* 55 Mo. 267, it is said: "The reformation of deeds and of contracts, whether sealed or otherwise, executed or merely executory, is one of the most familiar doctrines pertaining to equity jurisprudence. But it is to be observed of this power of reforming instruments, that it always has for its basis the fact that the parties thereto are capable of making a valid contract. This capability cannot be, in general, affirmed of a married woman. The only exception to this rule of incapacity, so far at least as it concerns her individual rights, is when a *feme covert* contracts with regard to her separate estate; for in respect to that she is held a *feme sole* by courts of equity. But beyond this the original inability to make a contract still exists in all its ancient rigor, save when modified by statute. It was one of the fundamentals of common law that the contract of a *feme covert* was absolutely void, except when she made a conveyance of her estate by deed duly acknowledged, or some matter of record; and this could only be done after private examination as to whether such conveyance was voluntarily made; and our

statutory mode, whereby the deed of a married woman is executed and acknowledged, is but substitutionary of the common-law method in this regard. This is the only change that our statute has wrought.

"It follows, as an inevitable sequence from these premises, that, aside from the exceptional case above noted, a *feme covert* is utterly incapable of binding herself by a contract to convey her land, either in law or equity, except by compliance with the prescribed statutory forms. * * * And as * * * she could only make a valid contract by complying with the requirements of the statute, the legitimate conclusion must be that a power of reformation does not exist in the present case, for the obvious and before stated reason that there is no binding contract to furnish a basis for the operation of such power." To the same effect see *Martin* v. *Hargardine,* 46 Ill. 322; *Leonis* v. *Lazzarovich,* 55 Cal. 52; *Gebb* v. *Rose,* 40 Md. 387; *Townsley* v. *Chapin,* 12 Allen, 476.

Upon the principle stated in the cases cited the deeds executed in 1852 and 1860 and in question in *Holland* v. *Moon,* and *Bowden* v. *Bland, supra,* were not subject to reformation; and for that reason the court obviously held that they could not be reformed.

But, since the adoption of the Constitution of 1874, a married woman may devise or convey her lands the same as if she were a *feme sole,* and her conveyances made since that time can be reformed as the deeds of single persons. The reason for the rule which denied to courts of equity the power to reform her deeds ceasing to exist, it no longer applies or is in force as to such conveyances of her real estate.

Decree affirmed.

NOTE.—The decree of reformation herein considered was rendered before the act of February 16, 1893 (Sand. & H. Dig. § 4842) was passed. The complaint fails to state whether the property of Mrs. Meadows was acquired before or since the adoption of the Constitutions of 1868 and 1874. If the husband had acquired marital rights in the land in question before the adoption of these constitutions, the doctrine of *Bowden* v. *Bland.* 53 Ark. 53, would doubtless have been applicable. See *Allen* v. *Hanks,* 136 U. S. 300, 309.—*Rep.*